143 P.3d 330 (2006)
Susan E. RIVAS, Respondent,
v.
EASTSIDE RADIOLOGY ASSOCIATES; Overlake Imaging; Washington Imaging Services; Allan Muraki, M.D. and Jane Doe Muraki, his wife, and the marital community thereof, Petitioners,
Overlake Hospital Medical Center; Overlake Internal Medicine Associates; Robert L. Davidson, M.D. and Jane Doe Davidson, his wife, and the martial community thereof, Defendants.
No. 55648-7-I.
Court of Appeals of Washington, Division 1.
September 18, 2006.
*331 William Hickman, Pamela Okano, Sherry Rogers, Reed McClure, Seattle, WA, for Appellants.
Richared Carrithers, Bellevue, WA, for Respondents.
APPELWICK, C.J.
¶ 1 This is a medical malpractice lawsuit subject to a three year statutory limitation period. The plaintiff filed the complaint three years and a day after the last allegedly negligent act or omission. The trial court denied the defendants' motion to dismiss as untimely. The trial court ruled that a factual question remained as to whether statutory tolling provisions applied while the plaintiff was allegedly incapacitated in the intensive care unit (ICU) for several days following the medical procedure. We agree that no petition for nor prior determination of incapacity is required to trigger tolling under RCW 4.16.190, and whether a particular plaintiff meets the statutory standard is a question of fact. However, we hold that a four-day incapacity period cannot be a tolling event as a matter of law. We reverse the trial court's order and dismiss the complaint with prejudice.

FACTS
¶ 2 Susan Rivas had renal vascular disease. Dr. Alan Muraki performed a renal angioplasty on July 19, 1996. Muraki did not treat Rivas after the July 19 procedure. Due to complications from the July 19 procedure, the loss of Rivas's kidney became inevitable on July 20 and the kidney was removed on *332 July 21. Rivas was in the (ICU) from July 19 through July 23, a total of four days. She was discharged from the hospital on July 26.
¶ 3 Rivas filed this action against Muraki[1] on July 21, 1999.[2] Muraki moved for summary judgment on the ground that Rivas's suit was barred by the statute of limitations. In her declaration, Rivas stated that she was unable to act or otherwise look out for herself from July 19 until at least July 23. For purposes of this appeal, we assume that Rivas was totally helpless in the ICU between July 19 and July 23.
¶ 4 The trial court ruled that the tolling statute
does not require the actual appointment of a guardian pursuant to Ch. 11.88 RCW, but, instead, permits a determination by the court in this action on the incompetency/disability issue with reference to the standards set forth in Ch. 11.88 RCW.
The trial court gave the parties leave to pursue discovery on the issue of Rivas's incapacity. After discovery, Muraki renewed his motion. The trial court ruled that factual issues precluded summary judgment as to whether Rivas was incapacitated as determined by chapter 11.88 RCW. The trial court found that
when the court accepts Plaintiff's evidence as true and makes all reasonable inferences therefrom, a fact finder could find that the Plaintiff was incapacitated at the time her cause of action accrued under RCW ch 11.88.... [The motion for summary judgment is denied] due to the existence of genuine issues of material facts as to whether the statute of limitations was tolled during the period of July 19, 1996 and July 23, 1996.
We granted Muraki's request for discretionary review.

ANALYSIS
¶ 5 Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one upon which the outcome of the litigation depends. Greater Harbor 2000 v. City of Seattle, 132 Wash.2d 267, 279, 937 P.2d 1082 (1997). All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wash.2d 17, 21, 896 P.2d 665 (1995). We review questions of law de novo. Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 813, 854 P.2d 1072 (1993).
¶ 6 Because the statute of limitations is an affirmative defense, the burden is on the party asserting it, here Muraki, to prove the facts that establish it. Haslund v. City of Seattle, 86 Wash.2d 607, 620-21, 547 P.2d 1221 (1976). In Washington, actions for medical malpractice must be brought "within three years of the act or omission alleged to have caused the injury or condition." RCW 4.16.350. For purposes of this appeal, we assume that Muraki's last negligent act or omission was on July 20, 1996.[3] Rivas filed her suit on July 21, 1999, more than three years after the last act or omission. Thus, Rivas's action against Muraki is time-barred unless the statute of limitation was tolled for some reason.
¶ 7 RCW 4.16.190 tolls the statute of limitation in cases of personal disability:
If a person entitled to bring an action mentioned in this chapter . . . be at the *333 time the cause of action accrued either under the age of eighteen years, or incompetent or disabled to such a degree that he or she cannot understand the nature of the proceedings, such incompetency or disability as determined according to chapter 11.88 RCW, ... the time of such disability shall not be a part of the time limited for the commencement of action.
Chapter 11.88 RCW governs guardianships.[4] RCW 11.88.010 sets out the scope of the trial court's power to appoint guardians:
(1) The superior court of each county shall have power to appoint guardians for the persons and/or estates of incapacitated persons ...
(a) For purposes of this chapter, a person may be deemed incapacitated as to person when the superior court determines the individual has a significant risk of personal harm based upon a demonstrated inability to adequately provide for nutrition, health, housing, or physical safety.
...
(c) A determination of incapacity is a legal not a medical decision, based upon a demonstration of management insufficiencies over time in the area of person or estate. Age, eccentricity, poverty, or medical diagnosis alone shall not be sufficient to justify a finding of incapacity.
...
(f) For purposes of the terms "incompetent," "disabled," or "not legally competent," as those terms are used in the Revised Code of Washington to apply to persons incapacitated under this chapter, those terms shall be interpreted to mean "incapacitated" persons for purposes of this chapter.
¶ 8 Rivas argues that the statute of limitations was tolled by her incapacity under RCW 4.16.190 until July 23, 1996. Because Rivas asserts she is entitled to tolling, she bears the burden of proof. See Wickwire v. Reard, 37 Wash.2d 748, 751, 226 P.2d 192 (1951) (holding, in context of tolling of statute of limitation on different grounds than asserted here, that burden of proving event justifying tolling rests upon the person asserting it).
¶ 9 One aspect of the relationship between the tolling and guardianship statutes was addressed in Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 770 P.2d 182 (1989). In Young, a minor plaintiff had a guardian appointed. The Young court held that the appointment of a guardian did not diminish the minor's right to tolling under RCW 4.16.190. Rather, the Young court held that "[t]he words `the time of such disability' refer to the person's disabling condition itself, not merely the disability to bring suit" and that "[t]his focus on the disabling condition is reinforced by the reference to RCW 11.88." Young, 112 Wash.2d at 221, 770 P.2d 182. The Young court noted that the tolling statute did not mention the effect of the guardian's appointment, which the court interpreted to mean "that the statute was intended to operate regardless of the guardian's presence." Young, 112 Wash.2d at 221, 770 P.2d 182.
¶ 10 The parties are not arguing that a prior adjudication of incapacity under chapter 11.88 RCW is necessary to invoke the tolling provision, and the plain language of the tolling statute does not require such a prior adjudication. The legislature has not restricted the application of the tolling statute *334 only to cases where a prior adjudication of incapacity has been made. Had the legislature intended to require a prior adjudication, it could have used the language "pursuant to an order issued under chapter 11.88 RCW" instead of "such incompetency or disability as determined according to chapter 11.88 RCW." Because it did not do so, we do not impose a requirement of a prior order.
¶ 11 Rather, the tolling statute refers to the process set forth in chapter 11.88 RCW. The plaintiff's alleged incapacity must be evaluated on the basis set forth in the guardianship statutes. Although a prior determination of incapacity is not necessary to permit tolling under RCW 4.16.190, the plaintiff must show that a guardianship would have been appropriate had one been sought when the cause of action accrued. We hold that the legislature intended to allow the trial court to look back to determine whether, at the time the cause of action accrued, the plaintiff was incapacitated to the degree necessary to permit appointment of a guardian. If so, then tolling is appropriate under RCW 4.16.190. No separate petition for guardianship is required.
¶ 12 The guardianship statutes require the fact finder to determine the issue of the alleged incapacity by clear, cogent, and convincing evidence. RCW 11.88.045(3). Although the determination of incapacity is a factual question, factual questions "may be resolved on summary judgment if, given the evidence in the record, a court could reach only one reasonable result." Alaska Pac. Trading Co. v. Eagon Forest Prods., 85 Wash.App. 354, 361, 933 P.2d 417 (1997). Muraki argues that a few days' stay in the ICU cannot be a tolling event as a matter of law, because the guardianship statutes do not envision such an incapacity as within the scope of guardianship. Muraki stresses that the language of RCW 11.88.010(c) provides that a finding of incapacity must be "based upon a demonstration of management insufficiencies over time," (emphasis added) and that the time periods referenced in the guardianship statutes show that the phrase "over time" was not intended to apply to short-term incapacity of only a few days.
¶ 13 The Washington Supreme Court has recognized that appointment of a guardian is a time-consuming process. In re Schuoler, 106 Wash.2d 500, 505-06, 723 P.2d 1103 (1986). The legislature has set out its intent in providing for guardianships:
It is the intent of the legislature to protect the liberty and autonomy of all people of this state, and to enable them to exercise their rights under the law to the maximum extent, consistent with the capacity of each person. The legislature recognizes that people with incapacities have unique abilities and needs, and that some people with incapacities cannot exercise their rights or provide for their basic needs without the help of a guardian. However, their liberty and autonomy should be restricted through the guardianship process only to the minimum extent necessary to adequately provide for their own health or safety, or to adequately manage their financial affairs.
RCW 11.88.005. The guardianship statutes do not set out a minimum number of days of incapacity required in every instance to justify appointment of a guardian. Rather, whether a guardian was justified would depend on the nature and circumstances of each guardianship proceeding and the alleged incapacity.
¶ 14 However, the guardianship statutes set out notice and hearing time periods as procedural safeguards to prevent appointment of a guardian other than to the "minimum extent necessary." RCW 11.88.055. The shortest period in any section of the statute is under RCW 11.88.040, which allows the 10-day notice of a hearing date to be reduced for good cause to no less than three days. The alleged incapacitated person is entitled to consult with counsel of his or her choosing and prepare for the hearing for not less than three weeks. RCW 11.88.045(1)(a). A shorter period is presumed insufficient. RCW 11.88.045(1)(a). Upon receiving a guardianship petition, the court must appoint a guardian ad litem (GAL) to represent the best interests of the alleged incapacitated person. RCW 11.88.090(3). The GAL must file his or her report at least 15 days before the hearing on the petition. RCW 11.88.090(5)(f). Other time periods set out in *335 the guardianship statutes could add to the minimum time required to appoint a guardian.[5]
¶ 15 While we do not set out a bright line rule for the minimum duration of incapacity to qualify for a guardian to be appointed, it is clear that under the guardianship statutes, a four-day incapacity would be insufficient to permit appointment of a guardian. As a matter of law, Rivas cannot meet her burden of proof that a guardianship would have been appropriate when her cause of action accrued. The trial court erred in denying Muraki's motion for summary judgment. We reverse the trial court's order and grant Muraki's motion for summary judgment. We dismiss Rivas's complaint with prejudice.
DWYER, J., concurring.
AGID, J. (concurring).
While I agree with the majority opinion, I write separately to emphasize the guardianship statute's requirement that incapacity be "based upon a demonstration of management insufficiencies over time in the area of person or estate."[1] As the majority explains, the legislature clearly drafted the guardianship statute to avoid a rush to judgment that would unfairly or inappropriately deprive a ward of her liberty. In furtherance of that objective, it not only created the lengthy process the majority describes at pages 8-9, it also incorporated as a substantive standard the requirement that one seeking a guardianship establish a pattern of incapacity "over time." In my view, a four-day coma such as the one we have assumed Ms. Rivas suffered in this case, cannot as a matter of law suffice to meet that substantive standard. I therefore agree that the trial court should have granted Muraki's motion for summary judgment.
NOTES
[1] Rivas also named several other defendants. All defendants except petitioners herein have been dismissed. For ease of reference, we refer to the remaining defendants as "Muraki," "defendants," or "petitioners."
[2] Muraki notes that Rivas's investigation started significantly earlier than she filed her lawsuit. Muraki also notes that neighboring states have shorter limitation periods than Washington. Neither of these considerations is relevant. The only question is whether Rivas brought her claim within the time limit the Washington Legislature has set forth, not whether she could or should have brought it earlier. The fact that Washington's limitation period for medical malpractice claims is longer than that of neighboring states is a legislative policy decision that does not affect the analysis in this case.
[3] Muraki asserts that his latest act or omission was on July 19. The trial court ruled that the loss of the kidney became inevitable as of July 20, and Rivas adopts this finding. Rivas asserts that her cause of action accrued on July 20, when the loss of the kidney became inevitable.
[4] Rivas argues that the standards set out in a prior version of the guardianship statutes apply. We disagree. In 1977, the legislature amended the tolling statute to remove the word "insane" and add the reference to the guardianship statutes. Laws of Washington 1977, 1st Ex.Sess., ch. 80 § 2. The guardianship statutes underwent major revision in 1990 that included the insertion of the current language of RCW 11.88.010(1)(a), (b), and (c). Laws of Washington 1990, ch. 122, § 2, at 853. In 1993, the legislature amended the tolling statute again on an unrelated issue and retained the reference to the guardianship statutes. The current language of chapter 11.88 RCW controls the standards by which a trier of fact would determine whether tolling is triggered under RCW 4.16.190 in cases of incapacity. The current language was in effect when Rivas was in the ICU. And, although the tolling statute's reference to the guardianship statutes was added prior to the 1990 amendments, the language was retained when the tolling statute was later amended in 1993. See City of Seattle v. Green, 51 Wash.2d 871, 874, 322 P.2d 842 (1958) ("[w]hen a statute is adopted by specific descriptive reference, the adoption takes the statute as it exists at that time").
[5] See, e.g., RCW 11.88.030(4)(a) (petitioner must serve notice of proceeding no more than five days after filing petition); RCW 11.88.030(5) (petitions shall be heard within 60 days); RCW 11.88.090(3) (GAL has five days from receipt of notice of appointment to file and serve statement of qualifications, and any party can seek a show cause hearing for why the GAL should not be removed within three days of service of the statement); RCW 11.88.045(4) (a written medical report must be presented to the court by a provider who personally examined and interviewed the alleged incapacitated person within 30 days of preparing the report).
[1] RCW 11.88.010(1)(c) (emphasis added).